Braun, Appellant, vs. Brown, Respondent.*

*September 9—October 8, 1957.*

* Motion for rehearing denied, with $25 costs, on December 3, 1957.

For the appellant there was a brief by *Charlton, Yanisch & Binzak,* attorneys, and *William A. Ritchay* of counsel, all of Milwaukee, and oral argument by *Mr. Earl A. Charlton* and *Mr. Ritchay.*

For the respondent there was a brief and oral argument by *Stephen J. Hajduch* of Milwaukee.

WINGERT, J. We have reached the conclusion that plaintiff is entitled to recover the unpaid instalments of support money called for by the judgment of divorce, and that accordingly the judgment in the present action must be reversed.

1. Sec. 247.32, Stats., provides that after a judgment providing for alimony or other allowance for the wife and children,—

". . . the court may, from time to time, on the petition of either of the parties, revise and alter such judgment respecting the amount of such . . . allowance and the payment thereof. . . ."

Thus it was open to defendant Brown, at any time before the boy died, to apply to the court for relief from the support-money provisions of the divorce judgment. He made no effort to do so.

In *Halmu v. Halmu,* 247 Wis. 124, 19 N. W. (2d) 317, this court held in a carefully considered opinion that when the youngest of several children for whose benefit an allowance of support money has been made reaches age twenty-one, the power of the divorce court to revise the support-money provisions of the divorce judgment terminates; and the ex-wife may then maintain an independent action, in the nature of a common-law action of debt upon a record, to recover the unpaid instalments of support money. (247 Wis. at pp. 131, 132, 135.)

The rule and reasoning of the *Halmu Case* are equally applicable to the case at bar. The death of an only child, like the attainment of his majority, operates to terminate the jurisdiction of the divorce court to modify the judgment for support money, and the ex-wife may then maintain an independent action to recover the unpaid instalments.

In *Halmu* it was observed, with reference to the action for unpaid support money, that—

"Under these circumstances, we consider that plaintiff need only show the amounts due by reason of the judgment during the minority of the children, subtract payments made by defendant, and the balance will be the amount owed by defendant."

it being merely a matter of mathematical computation. (247 Wis. at p. 136.) The court nevertheless considered a contention that the plaintiff ex-wife was guilty of laches, but held that she was not, without saying what effect on her rights laches would have had if proven. (247 Wis. at pp. 136, 137.)

In the present case it is not necessary to determine whether, as intimated in *Halmu,* the court in such an action is always limited to a mathematical ascertainment of the amounts remaining unpaid, and must enter judgment therefor regardless of other considerations, or whether, on the other hand, the court may exercise the familiar power of a court of equity to relieve against a judgment whose enforcement would be inequitable. Even assuming the existence, after the death of the child, of power to relieve defendant from the support-money provisions of the divorce judgment on equitable grounds, we are satisfied that defendant was in no position to invoke the aid of equity. Equitable relief from a money judgment will not be granted to one who is guilty of inexcusable neglect in asserting his right to such relief. *Schulteis v. Trade Press Pub. Co.* 191 Wis. 164, 165, 210 N. W. 419; *Grady v. Meyer,* 205 Wis. 147, 152, 236 N. W. 569; *Kiel v. Scott & Williams,* 186 Wis. 415, 420, 202 N. W. 672.

In the present case, on his own story, defendant knew for eight years that plaintiff was failing to keep him advised of the whereabouts of the child and thereby depriving him of visitation. He admitted he made no serious effort to find them after the first year. At no time after the entry of judg-

ment of divorce does it appear that defendant made any effort to comply with the support-money provisions of the judgment, or to apply to the court for relief therefrom, or to enforce the visitation provisions. There is no showing that he was unable to pay after a few months at the beginning when he suffered from an injury.

Defendant having thus slept on his rights, equity will not now relieve him from the judgment to which he accorded so little respect for so many years. The judgment of a court is not to be trifled with.

We cannot agree with the trial court that defendant was excused from compliance with the divorce court's judgment for support money by the fact that plaintiff and Mr. Braun treated the boy as if he were their child. That was matter which could have been considered by the divorce court in a timely application to revise the terms of the judgment, but defendant is in no position to invoke it now, for the reasons above stated. The boy remained his child, legally and naturally. Neither do we find merit in the suggestion that recovery by the plaintiff in the present action will result in her unjust enrichment. She and Braun supported the boy as a part of their family unit, and even if Braun was the breadwinner and plaintiff the homemaker, she presumably suffered commensurate pecuniary injury by defendant's failure to do his duty.

2. Plaintiff's claim for the boy's funeral expenses stands in a different position. The divorce judgment made no provision for such a contingency. The funeral arrangements were made without consulting defendant. It does not clearly appear that plaintiff, as distinguished from Braun, paid the funeral expenses. In the peculiar circumstances of this case we cannot say the trial court was wrong in denying recovery of this item.

3. While the judgment must be reversed, appellant will be denied printing costs in this court because of failure to make timely service of her brief and appendix.

*By the Court.*—Judgment reversed, with directions to enter judgment for the plaintiff for all accrued and unpaid amounts of support money. No printing costs to be taxed in this court.

The following dissenting opinion on motion for rehearing was filed December 3, 1957:

STEINLE, J. (*In re motion for rehearing*). On the appeal, laches was not argued by the parties, nor was determination relative thereto made by this court. On the motion for rehearing the defendant James Gordon Brown specifically directed attention to items in the answer, the evidence and the statement of the trial court which, in my opinion, justify the granting of a new trial in the interest of justice. The answer set forth facts which reflected inequitable conduct and delay on the part of the plaintiff, Rose Ann Braun. Evidence adduced thereunder, if found to be credible, would indicate that the plaintiff may well have been guilty of laches. The court determined that the plaintiff's second husband assumed the role of *loco parentis* and became liable for the support of the minor. *Nunc pro tunc* findings of fact were submitted upon which laches may well have been predicated. It now appears that during the course of the hearing at which such findings of fact were being considered, the trial court indicated that the plaintiff was guilty of laches. However the proffered findings of fact were not signed by the court, and the decision was based only on the facts relating to the *loco parentis* issue. Had the court made findings of fact establishing laches, there would have been no liability on the part of the defendant such as found in *Halmu v. Halmu*

(1945), 247 Wis. 124, 136, 19 N. W. (2d) 317. In that case when determining that laches did not exist this court said:

"There are, however, two questions that need to be considered in connection with the amount due. The first is whether plaintiff, in spite of her belligerency, was guilty of laches because in the case of every contempt order she accepted the determination of the court as to the relief awarded her. We think there is nothing to this proposition. *Plaintiff tried as hard as she could and used all means available to her to collect sums due for support money.*" (Emphasis supplied.)

By reason of the fact that justice probably may have miscarried, I am of the opinion that this court ought to direct that in the interest of justice the case be remanded for determination as to whether the plaintiff had been guilty of laches.

I am authorized to state that Mr. Justice CURRIE and Mr. Justice FAIRCHILD share the view expressed here.